UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ROSALIE C. SARRO, Individually )
    and as Administratrix of  )
    the Estate of Linda A.   )
    Rivers,               )
        Plaintiff,      )
                     )
        v.             )  C.A. NO. 08-10224-MLW
                     )
PHILIP MORRIS USA, INC.,   )
        Defendant.      )

MEMORANDUM AND ORDER

WOLF, D.J.                                              May 12, 2010

I.   INTRODUCTION

Plaintiff Rosalie Sarro, administratrix of the estate of Linda
Rivers, filed this suit in Essex Superior Court on December 20,
2007.  She alleges that defendant Phillip Morris USA, Inc.'s
("Philip Morris") defective design and manufacture of Marlboro
cigarettes caused the December 24, 2004 fire that killed Rivers and
substantially damaged the building in which she was killed.  Sarro
seeks recovery for both wrongful death and property damage.
Sarro's claims were removed to federal court by Phillip Morris.
Sarro filed an amended complaint, which contained eight counts.  On
October 17, 2008, Philip Morris filed a motion to dismiss Sarro's
amended complaint.

Following oral argument on August 13, 2009, this court
allowed, in part, Philip Morris' motion to dismiss.  Specifically,
the court dismissed Counts III through VIII, which raised claims of

negligence (III-IV), breach of implied warranty (V-VI), and strict liability (VII-VIII).  Essentially, these counts alleged that Philip Morris is liable because its product design was unreasonably dangerous because there was an alternative design for the cigarettes which would have reduced their propensity to continue to burn when left unattended.  <u>See</u> Aug. 13, 2009 Tr. at 38, 43; <u>see also</u> 19 NYCRR 429.1 (setting standards for reduced ignition propensity cigarettes to be sold in New York).

Sarro has filed a Motion to Reconsider the Order of August 13, 2009 Dismissing Counts III-VIII of the Plaintiff's Amended Complaint and to Certify a Question to the Supreme Judicial Court of the Commonwealth of Massachusetts (the "Motion").  Philip Morris opposes the Motion.

For the reasons stated below, the Motion is being denied.

II.  LEGAL STANDARD

A.  <u>Motion for Reconsideration</u>

"[A]bsent 'a particularly egregious abuse of discretion,' district courts are free to reconsider their interlocutory orders."  <u>Sanchez v. Triple-S Management Corp.</u>, 492 F.3d 1, 12 n.12 (1st Cir. 2007) (quoting <u>Harlow v. Children's Hosp.</u>, 432 F.3d 50, 55-56 (1st Cir. 2005)).  The Supreme Court, however, has stated that "courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice."  <u>Christianson v.</u>

Colt Industries Operating Corp., 486 U.S. 800, 817 (1988); see also
Antony v. Duty Free Americas, Inc., --- F. Supp. 2d ---, 2010 WL
1416514, at *2 (D. Mass. Apr. 5, 2010).

When considering a motion for reconsideration, the court must
balance the need for finality against its duty to render just
decisions. See Davis v. Lehane, 89 F. Supp. 2d 142, 147 (D. Mass.
2002).  Ultimately, "motions for reconsideration are appropriate
only in a limited number of circumstances: (1) if the moving party
presents newly discovered evidence, (2) if there has been an
intervening change in the law, or (3) if the movant can demonstrate
that the original decision was based on a manifest error of law or
was clearly unjust." United States v. Allen, 573 F.3d 42, 53 (1st
Cir. 2009); see also Ferrara v. United States, 372 F. Supp. 2d 108,
119 (D. Mass. 2005).  These three exceptions are "narrowly
configured and seldom invoked." United States v. Connell, 6 F.3d
27, 31 (1st Cir. 1993).

B.   Certification of a Question of State Law

"The decision whether to certify a state law issue to the
state's high court 'in a given case rests in the sound discretion
of the federal court.'" Fisher v. Bar Harbor Banking and Trust Co.,
857 F.2d 4, 7 (1st Cir. 1988) (quoting Lehman Bros. v. Schein, 416
U.S. 386, 391 (1974)).  This "decision is guided in . . . part by
whether the state maintains a certification procedure," which
Massachusetts does. See id. at 7 n.2.

Under Massachusetts law, the Supreme Judicial Court of Massachusetts (the "SJC") may answer a question of law certified to it by a United States District Court "if [the District Court is facing] questions of [] of [Massachusetts] state [law] which may be determinative of the cause then pending in the [District] court and as to which it appears to the [District] court there is no controlling precedent in the decisions of this court." Mass. Sup. Jud. Ct. R. 1:03; see, e.g., Migliori v. Airborne Freight Corp., 952 F. Supp. 38, 43 (D. Mass. 1997). A party seeking to have a question certified to the SJC must "set forth (1) the question of law to be answered; and (2) a statement of all facts relevant to the questions certified and showing fully the nature of the controversy in which the questions arose." Mass. Sup. Jud. Ct. R. 1:03.

"'The purpose of certification is to ascertain what the state law is. . . .'" Fischer, 857 F.2d at 7 (quoting Tarr v. Manchester Insurance Corp., 544 F.2d 14, 15 (1st Cir. 1976)). When, however, a district court determines that it can resolve a question through application of a well-developed body of case law from state and federal courts, including the SJC, then the court should deny a motion to certify. See Losaccco v. F.D. Rich Constr. Co., Inc., 992 F.2d 382, 384 (1st Cir. 1993). "When the highest state court has not issued a definitive ruling on the precise issue at hand, the federal courts may refer to analogous decisions, considered dicta,

scholarly works, or other reliable sources to ascertain how the highest court would rule." Id.

III. ANALYSIS

    A.  There Is No Justification for Reconsidering the Order

    Sarro argues that the SJC's holding in Donovan v. Philip Morris USA, Inc., 455 Mass. 215 (2009), which was decided in October, 2009, "articulated an evolutionary change in Massachusetts law with respect to tort litigation in general and to damages caused by the defendant's products, Marlboro cigarettes, in particular." Pl.'s Mot. at 4.

    Accordingly, she requests reconsideration of the August 13, 2009 decision not because there has been discovery of new evidence or a clear error of law in that decision, but rather because, she contends, there has been an intervening change in the law. See Allen, 573 F.3d at 53. However, Donovan does not represent a change in the law relevant to this case.

    In Donovan, plaintiffs alleged that Philip Morris had wrongfully designed, marketed, and sold Marlboro cigarettes that "deliver an excessive and unreasonably dangerous quantity of carcinogens when smoked by humans." 45 Mass. at 218.  In particular, plaintiffs claimed that Marlboro cigarettes' level of carcinogens made them more dangerous to smokers' health than other commercially acceptable and feasible alternatives. Id. Plaintiffs raised claims for breach of implied warranty based on design

defect, negligent design, and testing, as well as violations of Mass. Gen. Laws c. 93A, §§ 2,9. Id. at 217.

Plaintiffs claimed that their prolonged and continuing use of Marlboro's carcinogen-filled cigarettes damaged their lungs and significantly increased their risk of developing lung cancer. Id. at 218-19. They argued that this injury entitled them to present and future medical expenses. Id. at 221. Philip Morris, however, asserted that plaintiffs, who did not yet have lung cancer, had not established an essential element of a tort claim: "a manifest physical injury, that is, physical harm manifested by objective symptomology." Id. at 221.

The case began in the United States District Court. The district judge certified two questions of law to the SJC. Id. at 215-16. Both questions asked the SJC to consider how to apply "general principles of negligence to cases involving toxic torts." Id. at 216. For the purposes of the instant case, the only potentially relevant question is the first one: "Does the plaintiffs' suit for medical monitoring, based on subclinical effects of exposure to cigarette smoke and increased risk of lung cancer, state a cognizable claim and/or permit a remedy under Massachusetts state law?" Id. at 215-16.[1]

---

[1] The second question, not relevant to the instant case, was: "If the plaintiffs have successfully stated a claim or claims, has the statute of limitations governing those claims expired?" Donovan, 455 Mass. at 216.

The SJC found that it did. _Id._ at 227.  The court recognized a need for flexible application of negligence principles in the toxic tort context, given that "[m]odern living has exposed people to a variety of toxic substances[,] [and] [i]llness and disease from exposure to these substances are often latent, not manifesting themselves for years or even decades after the exposure." _Id._ at 225.  Accordingly, the court in _Donovan_ held that, "the [plaintiffs'] physiological changes with the attendant substantial increase in risk of cancer, and the medical necessity of monitoring with its attendant cost, may adequately establish the elements of injury and damages." _Id._

In explaining this holding, the SJC stated it was necessary to "adapt" general tort principles, which "developed in the late Nineteenth and early Twentieth centuries, when the vast majority of tortious injuries were caused by blunt trauma and mechanical forces." _Id._  Ultimately, the SJC found it appropriate to extend general negligence principles to claims regarding "exposure to toxic substances . . . even if the full effects [of those substances] [we]re not immediately apparent." _Id._

While Sarro argues that _Donovan_ provides a justification for reconsideration of the dismissal of her implied warranty, negligence, and strict liability claims, the court concludes that _Donovan_ is not relevant to the instant case.  _Donovan_'s analysis involved the application of negligence principles to toxic torts,

while this case is a products liability action in which it is
alleged that the cigarette at issue burned for an unreasonably long
time, not that its chemical composition made it unreasonably
dangerous to smoke. See 455 Mass. at 216.  The alleged cause of
plaintiffs' injuries in Donovan was the quantity of carcinogens in
the cigarettes. Id. at 218.  There, the plaintiffs' injuries were
"[s]ubcellular [] physiological changes" that put the plaintiffs at
higher risk of significant future harm. Id. at 225.  That sort of
cause and that sort of injury are different than typical causes of
tortious harm (the "blunt trauma" and "mechanical forces"
referenced in Donovan) which cause injuries that are, generally,
immediate and obvious. See, e.g., Sprietsma v. Mercury Marine, 537
U.S. 51, 54-70 (2002) (considering whether federal law pre-empted
tort claim raised by husband of boater who was killed by engine
propeller blades); Barger v. Charles Mach. Works, Inc., 658 F.2d
582, 583-87 (8th Cir. 1981) (considering tort claim raised by
construction worker whose leg was crushed by a combination of
machines); Donahue v. Old Colony R. Co., 153 Mass. 356, 359-60
(1891) (considering tort claim raised by train laborer whose leg
was injured by a broken draw-bar).

    In this case, the cigarette's capacity to create fire, an
obvious trait inherent in its use, is the cause of the harms
alleged. See, e.g., Kearney v. Philip Morris, Inc., 916 F. Supp.
61, 72 (D. Mass. 1996) (finding injuries caused by fires started by

cigarettes to be "injuries resulting from common everyday products whose obvious dangers are known to be associated with the product").[2]  In its capacity to cause immediate and obvious injury, fire is analogous to mechanical forces or blunt trauma.  Similarly, the damage done to people or property by fire is, generally, obvious and immediate, like the damage caused by mechanical forces or blunt trauma.  Compare Farley v. Edward E. Tower & Co., 271 Mass. 230, 233-39 (1930) (considering products liability claim where woman's head was severely burned by hairdresser), with Hayes v. Douglas Dynamics, Inc., 8 F.3d 88, 89-94 (1st Cir. 1993) (considering products liability claim where man was killed by head injury sustained in car accident).

Indeed, courts have long considered tort claims regarding fire damage to people or property caused by allegedly defective products.  See, e.g., Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 707-17 (1991) (considering products liability claim regarding alleged design defects in car which caught fire); Pitman v. Lynn Gas & Electric Co., 241 Mass. 322, 322-25 (Mass. 1922) (considering products liability claim regarding a gas flatiron which set woman's clothes on fire and severely burned her).

---

[2] Massachusetts courts have long recognized that the behavior of fire and combustible material is a matter of common knowledge.  See Gates v. Boston & M.R.R., 255 Mass. 297, 302 (1926) ("The operation of the established laws of nature in the familiar forms of combustion, the tendency of fire to persist when once started in wood, and the effects of wind on fire, are matters of common knowledge.").

Ultimately, because <u>Donovan</u>'s holding affects the analysis applicable to toxic tort liability, not conventional products liability, it does not impact this case. Accordingly, <u>Donovan</u> does not provide an "intervening change in the law" that justifies reconsideration of the August 13, 2009 dismissal of Counts III-VIII of Sarro's amended complaint. <u>See</u> <u>Allen</u>, 573 F.3d at 53.

    B.   <u>No Justification for Certifying a State Law Question</u>

The question Sarro seeks to have certified is:

"Does the plaintiff's Amended Complaint state viable claims under Massachusetts law with respect to damages cause by fire, resulting from the use of the defendant's addictive product?"

It is only appropriate to certify this question if there is no controlling SJC precedent and this court cannot, through consideration of relevant case law, determine "what the state law is." <u>Fischer</u>, 857 F.2d at 7; <u>see</u> <u>Losaccco</u>, 992 F.2d at 384. Here, because the dismissal of Counts III-VIII was based on established principles of state law that have not been altered, there is no justification for certifying Sarro's proposed question. <u>See, e.g.</u>, <u>Kearney</u>, 916 F. Supp. at 71-72 (citing Massachusetts cases and federal cases applying Massachusetts law).

As Judge Robert Keeton stated in <u>Kearney</u>, Massachusetts courts refuse to impose liability on manufacturers for "injuries resulting from common everyday products whose obvious dangers are known to be associated with the product." 916 F. Supp. at 72. Since the

<u>Kearney</u> decision, Massachusetts courts have not strayed from this general principle. <u>See</u> <u>Martinelli v. Custom Accessories, Inc.</u>, 2002 WL 1489610, at *2-3 (Mass. Super. May 21, 2002) ("A manufacturer or seller need not incorporate safety features into its product so that no harm will come to a user no matter how careless she may be and no matter what the circumstances of its use.") (citation omitted).   A variety of courts have used similar reasoning to reject products liability claims against cigarette manufacturers whose cigarettes caused damaging fires. <u>See</u> <u>Mercer Mut. Ins. Co. v. Proudman</u>, 396 N.J. Super 309, 315 (N.J. Super A.D. 2007) (affirming dismissal of suit alleging defective design of cigarette when alternative design would merely reduce risk of fire, not eliminate it); <u>see also</u> <u>Walker v. Philip Morris USA, Inc.</u>, 610 F. Supp. 2d 785, 788-89 (W.D. Ky. 2009) (granting motion to dismiss because cigarettes are common products and risks of lit cigarette coming into contact with a piece of furniture are obvious); <u>Sacks v. Philip Morris, Inc.</u>, No. CIV. A. WMN-95-1840, 1996 WL 780311, at *7 (D. Md. Sept. 19, 1996) (same); <u>Lamke v. Futorian Corp.</u>, 709 P.2d 684, 687 (Okla. 1985) (same).

This reasoning was the foundation of the court's August 13, 2009 decision to dismiss Counts III-VIII of Sarro's amended complaint. <u>See</u> Aug. 13, 2009 Tr. at 45-49; Aug. 13, 2009 Order.[3]

---

[3] The court also held that dismissal of these claims was appropriate because Sarro's amended complaint failed to include an essential allegation: that the alternative design would have

11

There has been no change in the applicable law.  Accordingly, Sarro's proposed question is not being certified because this court can, and in fact has, resolved the issue "through application of a well-developed body of case law from state and federal courts, including the SJC." In re Engage, Inc., 330 B.R. 5, 6 n.1 (D. Mass. 2005) (citing Losaccco, 992 F.2d at 384).

While it is conceivable that the law in Massachusetts could change if Sarro's question were presented to the SJC, "[t]he purpose of certification is to ascertain what the state law is, not, when the state court has already said what it is, to afford a party an opportunity to persuade the court to say something else." Tarr, 544 F.2d at 15; accord Nieves v. Univ. of Puerto Rico, 7 F.3d 270, 278 (1st Cir. 1993); Venezia v. Miller Brewing Co., 626 F.2d 188, 192 n.5 (1st Cir. 1980).  Accordingly, no certification is appropriate because the "purpose of certification . . . is not to permit a party to seek to persuade the state court to change what appears to be present law." Cantwell v. Univ. of Mass., 551 F.2d 879, 880 (1st Cir. 1977); see also In re TJX Companies Retail Sec. Breach Litigation, 564 F.3d 489, 499 (1st Cir. 2009) ("Nor will we certify an issue where state law is clear.").

---

prevented Rivers' death or the damage to the building. See Aug. 13, 2009 Tr. at 44-45 (citing, among others, Gillespie v. Sears, Roebuck & Co., 386 F.3d 21, 27 (1st Cir 2004)); see also Fidalgo v. Columbus McKinnon Corp., 56 Mass. App. Ct. 176, 185-85 (2002) (affirming directed verdict against plaintiff where no proof that the proposed alternative design would have prevented the harm).

IV.   ORDER

In view of the foregoing, Sarro's Motion to Reconsider the Court's Order of August 13, 2009, Dismissing Counts III-VIII of the Plaintiff's Amended Complaint and to Certify a Question to the Supreme Judicial Court of the Commonwealth of Massachusetts (Docket No. 45) is DENIED.


                                        /s/ Mark L. Wolf
                                        UNITED STATES DISTRICT JUDGE